David Grayson PIFER, Plaintiff and Petitioner,

v.

Melvin R. LAIRD, etc., et al., Defendants and Respondents.

No. C-70-608.

United States District Court, N. D. California.

Feb. 17, 1971.

Penrod & Himelstein, San Francisco, Cal., for plaintiff and petitioner.

James L. Browning, Jr., U. S. Asst. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for defendants and respondents.

ORDER DENYING ALL RELIEF AND DISMISSING THE ACTION AND TEMPORARY RESTRAINING ORDER

OLIVER J. CARTER, Chief Judge.

This case involves a serviceman's claim to a conscientious objector discharge from the army. Petitioner has been denied the right to file his C.O. application at the Oakland Army Base. He seeks a declaratory judgment and order in the nature of a writ of mandamus.

At issue is a change in an army regulation that denies servicemen the right to file applications for conscientious objector discharges while stationed at temporary duty stations such as the Oakland Overseas Replacement Center. The requested relief is a finding that this regulation a) does not exist, b) was improperly promulgated, c) violates United States Statutes, and d) is unconstitutional either on its face or as applied to the petitioner. Additionally, the petitioner requests that the Court issue a mandate to the proper authorities at the Oakland Overseas Replacement Center directing them to accept and process petitioner's application for a conscientious objector discharge.

This matter is presently before the Court on the petitioner's motion for a preliminary injunction to enjoin the defendants from removing the plaintiff from the Court's jurisdiction and directing that defendants allow plaintiff to appear in person at any future hearing.

Private Pifer was inducted into the military service on April 14, 1969 for a period of two years. After completing basic training he was assigned on July 6, 1969 to the 18th Army Band, Fort Devins, Massachusetts. On December 16, 1969 plaintiff was alerted for overseas assignment to Viet Nam with an "availability date" in March, 1970. He was given 30 days leave on February 12, 1970, with orders to report to the Oakland Overseas Replacement Center on March 20, 1970, in transit to Viet Nam. On March 23, 1970, plaintiff submitted an application for discharge as a conscientious objector to his commanding officer at the Oakland Army Base. The commanding officer refused to accept the application pursuant to the amended regulation. (A.R. 635–20 effective March 6, 1970).

Upon examining the exhibits and affidavits furnished by the United States, the Court finds that there is a revision of Army Regulation 635–20 which was sent as a telegraphic message on March

6, 1970, to be effective immediately. It provides in pertinent part as follows:

" * * * An individual who has departed his unit of assignment in compliance with reassignment orders may not make application for discharge as a conscientious objector until he arrives at his new permanent duty station. The foregoing does not apply to individuals who are TDY (temporary duty) enroute to reassignment orders for periods in excess of eight weeks."

This regulation was promulgated by John W. Cooke, Lieutenant Colonel, Chief of the Enlisted Branch of the Classification and Standards Division. It was issued pursuant to paragraph 1–12a of Army Regulation 310–3, which provides:

"Changes to DA publications will be published as numbered changes, except in rare instances where instructions must be disseminated immediately and a published change could not reach users before a mandatory required date. Under the most urgent circumstances, interim changes may be transmitted by means of an electrical message. The number of interim changes must be held to an absolute minimum. In determining the need for a message change, proponent agencies will consider the following:

"(1) Message changes present problems at every echelon; the initial transmission seldom reaches user level and the message must be redisseminated, often at several echelons.

"(2) Not all users of publications have electrical transmission and reception facilities.

"(3) Few message changes ever reach all holders of the publication being changed.

"(4) Messages occasionally are garbled in transmission which results in errors or inquiries back to the originator—both of which contribute to delay.

"(5) Message changes are expensive and are a duplication since the instructions must be included in a printed publication."

Petitioner contends that the need for the change in handling C.O. applications was not urgent and therefore the army violated this authorizing regulation in promulgating the change by telegram. Such a contention was upheld by this Court in an opinion written by Judge Wollenberg in Wright v. Laird, C 70 1133, August 6, 1970. I differ with my brother Wollenberg in the importance to be attached to the "most urgent circumstances" provision of A.R. 310–3. It should be noted that that regulation applies to all publications including handbooks, pamphlets and instruction manuals. Read in this light it is quite likely that the strongly restrictive language was intended for these informative types of publications rather than to hinder the army in changing its own regulations. It is also relevant that this regulation pertains merely to publication rather than to the effectiveness of the newly changed regulations. It would be unusual for the publication process to stand as a bar to regulation changes that the army has deemed necessary to enact.

■■ Additionally, the army is entitled to a first crack at interpreting its own regulations and to a great deal of deference in the interpretations it reaches. Udall v. Tallman, 380 U.S. 1, 85 S. Ct. 792, 13 L.Ed.2d 616 (1964). Here it seems the army has chosen to interpret 'urgency' with less emphasis than might normally be credited to that word in the marketplace. However, this Court cannot conclude that it was unreasonable for the army to determine that the situation regarding C.O. applications was in some manner 'urgent'. Urgent can mean requiring immediate attention rather than the more common meaning of undue importance. Thus while the increasing numbers of C.O. applications at Oakland and other temporary duty stations may not have been a major problem, it was not unreasonable for the army to determine that it was an irritation that was greatly increasing with

time, and therefore one requiring immediate attention. In such areas of administrative implementation this Court must defer greatly to those who are interpreting their own rules. This is particularly true in the instant case where regulation A.R. 310-3 specifically appoints the Adjutant General, not the courts, to determine compliance with its terms. The Adjutant General approved the telegraphic change of regulation A.R. 635-20.

Finally, this Court declines to follow the decision in Wright v. Laird, *supra,* because the regulations involved are of equal rank. Both A.R. 310-3 and 635-20 are promulgated in the same fashion and entitled to the same respect. It is a very doubtful practice to invalidate or limit the more recent regulation when it overlaps another of no greater force. This type of balancing act should be left to the agency involved barring a sufficient showing of prejudice. None was shown here.

■ Plaintiff further contends that even if the regulation does exist and was validly promulgated it nonetheless is void because it was not published in the Federal Register pursuant to the Administrative Procedure Act 5 U.S.C. § 552 and the Federal Register Act, 44 U.S.C. § 1501 et seq. These contentions are without merit. The Federal Register Act (44 U.S.C. § 1505(a)) specifically exempts from the publication requirements " * * * those not having general applicability and legal effect or effective only against Federal agencies or *persons in their capacities as officers, agents, or employees thereof:*" The Administrative Procedure Act excludes from its publication requirement those matters that are: "related solely to the internal *personnel* rules and practices of an agency." (5 U.S.C. § 552(b) (2).

Manifestly the army's regulations relating to discharge for conscientious objection are internal personnel matters within the meaning of the above exceptions. The contentions also lack merit because if such army regulations were required to be published the original A.R. 635-20 under which the plaintiff asserts the right to a C.O. discharge would also be void since it was never published. There would then be no provision in army regulations for the discharge of conscientious objectors.

■ The plaintiff contends that the revision to Army Regulation 635-20 violates the United States Constitution by denying due process and equal protection of the law. These contentions were adequately dealt with in the *Wright* case and need no further treatment here. This Court agrees with the conclusions of that case that the change in the regulation was reasonable and involves no "invidious discrimination". Accordingly, both constitutional contentions are without merit. The Court also finds without merit the contention that the change in regulation somehow involves the right to the effective assistance of counsel.

All of the contentions of the plaintiff having been examined and found wanting, it is ordered that the request for a preliminary injunction be denied. Schwartz v. Covington, 341 F.2d 537 (5th Cir. 1967). Furthermore, the Court having determined the amended regulation to be valid and constitutional the requested mandate is denied and the declaratory judgment refused. All contentions of the complaint having been disposed of it is ordered that the action be, and the same is hereby dismissed.

It is further ordered that the temporary restraining order retaining the petitioner in this District be continued in force and effect for ten (10) days from the date of this order, otherwise it is dissolved.