**Charles Edward STANO, Petitioner,**

v.

**James SCHLESINGER, Secretary of Defense, et al., Respondents.**

**No. 4–73 Civ. 330.**

United States District Court,
D. Minnesota.
Fourth Division.

Nov. 23, 1973.

Brian Solem, St. Paul, Minn., for petitioner.

Robert G. Renner, U. S. Atty., by Stephen G. Palmer, Asst. U. S. Atty., for respondents.

NEVILLE, District Judge.

Petitioner in this action, Lance Corporal Charles E. Stano, is a member of the United States Marine Corps Reserve. He has presented a writ of habeas corpus to this court claiming that he should be released from his Marine duties because he is a conscientious objector. 28 U.S.C. § 2241; Scaggs v. Larsen, 396 U.S. 1206, 90 S.Ct. 5, 24 L.Ed.2d 28 (1969). When he brought this petition the Marine Corps already had denied Stano's request and there is no contention that he failed to exhaust his administrative remedies. Both petitioner and the government have moved this court for summary judgment based on the record compiled by the Marine Corps in disposing of his request for release.

Corporal Stano entered the service on or about April 18, 1971. He apparently

volunteered, and his service contract required him to attend (1) a period of basic training, (2) six annual two week training courses, and (3) monthly drill assemblies for six years. Shortly after he took the oath Corporal Stano's father died, and both sides seem to agree that this affected the Corporal deeply. However, he did complete the rigorous basic training period successfully. After he returned home, and it became his duty to attend monthly drill assemblies, Corporal Stano claims that his religious beliefs crystallized and he submitted a request to Marine authorities for release from his remaining service commitment on the grounds that he had come to believe that he was conscientiously opposed to violence and war. Although the Corporal admitted that he had not held these beliefs upon his entry into the Marine Corps, when he petitioned for release he claimed his commitment was so deep as to preclude alternative service.[1] In a written statement Corporal Stano indicated that his father's death made him painfully aware of what death was, and this was a motivating factor in his decision that he could no longer be a part of the armed forces.

According to Marine Corps procedure several officers talked with Corporal Stano and evaluated his request. Colonel B. B. Woolsey was one of these officers and, although his report is equivocal, it seems to indicate that he recommended disapproval of the request because he did not feel that Corporal Stano sincerely held his professed religious beliefs. It should be noted that the Colonel did state that he felt Corporal Stano was sincere in his *desire to be separated from the military.* However, on reading the Colonel's comments as a whole, it is apparent that the Colonel thought that the loss of his father was the reason Corporal Stano sought a release from the Service, and not because of any deeply held religious conviction.

A military psychiatrist talked with Corporal Stano and came to the conclusion that the corporal's release request was based upon an "exaggerated grief reaction." He too felt that the loss of his father precipitated the corporal's release request and not any deeply held religious beliefs. The doctor wrote:

In my opinion, this man is attempting to strike out at the world because of his bereavement, which coincidently occurred at the exact time of his entering the military. He now attempts to manipulate the military, and thereby work out some of his anger over his acute loss.

The doctor also found that there was no psychiatric abnormality which would affect Corporal Stano's application for conscientious objector status.

Another officer, who had talked with Corporal Stano when he registered for Selective Service and his original enlistment, also indicated that the corporal's *desire for a discharge* is sincere. But he also apparently found that Corporal Stano's professed aversion to violence was insincere. On this issue the officer termed Corporal Stano "indecisive."

Pursuant to Marine Corps regulations a hearing was scheduled to investigate the request. The hearing was held in December, 1972. Corporal Stano was present accompanied by counsel. A report of the hearing was made and Corporal Stano was allowed to respond to this report. The report indicated that "his motivation for his present course of action is based on personal expediency and a lack of maturity." The report based this conclusion upon several facts. First, Corporal Stano's statements at various times were inconsistent. For instance, in his written statement Corporal Stano said:

I am not currently an active member of any religious sect or organization. I was baptized as a Catholic, but I

---

1. After Marine proceedings Corporal Stano presented a rebuttal affidavit wherein he stated that when originally questioned about alternative civilian work he responded that he would "have to think about it." However, this is impeached by his November, 1971 answer to a form question about willingness to perform alternative service where he filled in "no".

presently have no ties in the Catholic Church and I am not active in the Catholic Church. I have had nothing to do with the Catholic Church since I attended parochial school.

Yet at the hearing he impeached this statement by saying that he attended church every Sunday and has done so all his life.[2] Second, the testimony given by Corporal Stano at his hearing was primarily antimilitary and not directed toward describing his non-violent beliefs. This bolstered the conclusion that Corporal Stano simply did not want to continue to be associated with the unpleasantness of military duty. Third, in response to a question about whether he felt any obligation to fulfill the conditions of his service contract Corporal Stano responded that "a signature is only a signature". The hearing officer felt this reflected immaturity and irresponsibility.

█ Based on the opinions of the officers who interviewed Corporal Stano, the report of the hearing officer, and Corporal Stano's written and verbal statements the Commandant of the Marine Corps denied his request to be re-

classified a conscientious objector. In support of this decision the Commandants' letter gave reasons, but the basis for the decision was:

> While the evidence of record indicates that you object to continued military service, it does not support a conclusion that you have a firm, fixed and sincere objection to participation in war in any form or to the bearing of arms.

The letter also indicated that although Corporal Stano had stated at length his dis-affection for the military, he failed to clearly define what he did believe in, or the basis for his opposition to participation in war or bearing arms. The letter concluded:

> Your application is singularly devoid of any evidence indicating that your beliefs are held with the strength of traditional religious convictions.

Simply put, the denial was based on a finding of a lack of sincerity.[3]

█ Numerous cases have settled the standard to be applied in passing on the motions presently before the court: if there is a basis in fact[4] for the finding made by the Marine Corps then this

---

2. In rebuttal Stano argues that his answer in his written statement simply meant that he did not belong to any organizations associated with the Church (e. g. Knights of Columbus). And it is true that the question asked was in a section of the questionnaire titled *Participation in Organizations*. However, the clarity of the wording in the statement makes it unmistakable that he was referring to total church contact. Moreover, Stano's ability to state his position fully is reflected by the rest of the written statement. Had he been referring to ancillary organizations it seems to this court that he would have done so in more precise terms than those quoted above.

3. In passing on the present motions this court looks beyond the Commandant's denial letter to the entire record to find whether a basis in fact existed for the Marine action. Anything less would be unfair to the Marine Corps and perhaps a denial of due process to the petitioner. United States v. Rutherford, 437 F.2d 182, 183 (8th Cir. 1971); Vaughn v. United States, 404 F.2d 586, 592–593 (8th Cir. 1968); See also Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92

L.Ed. 59 (1947); De Moss v. United States, 218 F.2d 119 (8th Cir. 1954).

4. It must be noted that the confines of this standard are unclear. One commentator has stated:

> The Court seems to be striving, with little success, to reduce review to something less than what is customary under the substantial-evidence test, but the reality seems to be that judges in the application of the standard find themselves unable to sustain findings having a basis in the evidence which seems to them less than substantial.

Davis, Administrative Law Treatise, Sec. 28.-12 at 66 (1958). And the Eighth Circuit itself has said:

> The determination that [petitioner's] views did not stem from a moral or ethical basis is completely contradicted by the statements made by the applicant in his Form 150; and there is no *substantial evidence in the record of the type we have required* . . . sufficient to rebut those statements. United States v. Iverson, 455 F.2d 79, 82–83 (8th Cir. 1972).

court must allow that finding to stand. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); United States v. Abbott, 425 F.2d 910 (8th Cir. 1970).[5] And it is also clear that a finding of insincerity on the part of the applicant may be a proper basis in fact for a denial of conscientious objector status. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). In fact, in discussing the standard to be applied the Supreme Court, admitting it dealt with an area where the confines are difficult to enunciate, stated that this basis for denial was clear:

> The two groups of registrants that obviously do fall within these exclusions from the exemption are those whose beliefs are not deeply held and (another group).

Welsh v. United States, 398 U.S. 333, 342, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).[6] And it is also clear that the existence of inconsistent statements by the person claiming conscientious objector status may contradict the claim and be the basis for a denial. Witmer v. United States, supra; United States v. Abbott, 425 F.2d 910, 915 (8th Cir. 1970).

In deciding whether the Marine Corps had a basis in fact for its decision this court may consider the entire record before it. United States v. Rutherford, 437 F.2d 182, 183 (8th Cir. 1971); United States v. Abbott, supra, 425 F.2d at 914 n. 5; cf. Cox v. United States, supra; Tyrrell v. United States, 200 F. 2d 8 (9th Cir. 1952), cert. denied, 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346 (1953).[7] In that record, there must be some affirmative evidence indicating insincerity or bad faith to rebut petitioner's claim. United States v. Owen, 415 F.2d 383, 389 (8th Cir. 1969). The military cannot merely state that its officers disbelieved the claimant "without affirmative evidence to measure contradiction." United States v. Abbott, supra, 425 F.2d 910, 913 n.4.

■ Thus it appears that the standard is one which must be adhered to rigorously. However, this court is of the opinion that in this case the Marine Corps has fulfilled this standard. There are contradictions apparent on the record here. The petitioner, Corporal Stano, made inconsistent statements as to his relationship with the Catholic Church, and also as to his willingness to do alternate service. Also the fact that his general testimony at his hearing was primarily antimilitary might be termed inconsistent with the principle that he guided his life under the affirmative code of non-violence. There are other parts of the record which do not harmo-

5. It is clear that the same test covers conscientious objector requests whether made while a person is in the service or before a draft board. Packard v. Rollins, 422 F.2d 525 (8th Cir. 1970); Pitcher v. Laird, 421 F.2d 1272 (5th Cir. 1970).

6. In his brief petitioner argues that the depth of conviction is an impermissible consideration in this type of case. He cites Hackett v. Laird, 326 F.Supp. 1075, 1078 (W.D.Tex.1971), where the court did opine on the problem, but the case was decided on the ground that the Board never found the applicant to be insincere. 326 F.Supp. at 1079. Quite the contrary is present in the instant case. Petitioner would do well to heed the clear statement of the United States Supreme Court quoted above.

7. Petitioner cites cases which he argues stand for the proposition that the court's function is not to search the record for some basis to affirm the armed forces' decision where the reasons given are inadequate. United States v. Lenhard, 437 F.2d 936 (2d Cir. 1970); United States v. Deere, 428 F. 2d 1119 (2d Cir. 1970). This court does not feel the reasons given for the decision here are inadequate, but even if they were the inconsistencies in this record are so apparent that the court would be derelict in its duty if it chose to ignore them. To reverse the Marine Corps where there is ample evidence in the record to support its findings simply because it failed to incant the proper phrase in making its decision is not the function of this court. The court must look at the record in its entirety and see if it supports the reason given by the Marine Corps. Here the reason is insincerity and the basis in the record is ample.

nize but the court is satisfied that these contradictions, as well as other facts discussed earlier in this opinion form a sufficient basis in fact for the Marine Corps' denial. Petitioner cites many facts which support his sincerity. And the court is aware that all the facts in a case never favor one position. Yet these facts are not determinative in a case such as this where there are independent indicia of insincerity and the court is determining a "basis in fact." The court cannot simply substitute its judgment for that of the Marine Corps. That is not this court's function. By way of analogy in a draft case the Eighth Circuit said:

It is not for the courts to sit as super draft boards substituting their judgment on the weight of the evidence for that of the designated agencies. The scope of review is narrow, permitting the reviewing court to overturn a draft classification only if it has no basis in fact or if the local board's action has the effect of denying appellant basic procedural fairness. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968) vacated on other grounds, Morico v. United States, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970); United States v. Freeman, 388 F.2d 246 (7th Cir. 1967).

United States v. Watson, 442 F.2d 1273, 1277 (8th Cir. 1971). In Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 the Supreme Court said:

. . . the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards . . . are final even though they may be erroneous.

At 122–123, 66 S.Ct. at 427. See also Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1955). In this case the factual basis is present and thus the court is precluded from passing on the wisdom of the Marine Corps refusal to release the petitioner.

It must be noted that the Marine Corps does not contest the nature of the beliefs petitioner claims to possess. This case is not like United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, where sincerity was stipulated and the question involved the nature of the beliefs and whether they qualified under the statutory definition of conscientious objector. Here the Marine Corps seem to indicate that if the petitioner were found sincere his petition might have been granted. A lack of sincerity is the basis for the denial and no more. This finding also refutes petitioner's reliance upon Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), where the Court held that where several grounds are used for a classification, some of which are valid while others are invalid, a conviction based on that classification cannot stand since it may be based on the invalid grounds. Here the only ground was insincerity which was amply proved. It is a valid ground. Witmer v. United States, *supra*.

The petition for a writ of habeas corpus is denied. A separate order has been entered.